UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIAH STROUD, #936182,

        Petitioner,

                                      CASE NO. 5:17-CV-13132
v.                                      HONORABLE JOHN CORBETT O'MEARA

SHAWN BREWER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Miah Stroud ("petitioner") asserts that she is being held in violation of her constitutional rights. The petitioner was convicted of second-degree murder and three counts of felonious assault following a joint jury trial with co-defendant Tamarris Aldridge in the Wayne County Circuit Court and was sentenced to concurrent terms of 25 to 40 years imprisonment on the murder conviction and two to four years imprisonment on each of the assault convictions in 2014. In her *pro se* pleadings, she raises claims concerning the sufficiency of the evidence, the pre-trial identification procedures, and the exclusion of defense expert witness testimony. The respondent has filed an answer to the petition contending that it should be denied. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.    Facts and Procedural History**

The petitioner's conviction arises from the shooting death of a man and an assault upon other

individuals at a home in Detroit, Michigan on August 10, 2013. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendants' convictions arise out of the shooting death of Antoine Holley, Sr., at his home in Detroit, in front of his girlfriend, Latasha Bargaineer, their son, Antoine Holley, Jr. (Holley Jr.), and Antoine's father, Terrell Johnson.
>
> ***
>
> Latasha and Antoine had been in an "on and off" relationship for almost three years. They resided together with their son, Holley Jr., and Antoine's father, Terrell. In July of 2013, one of Miah's half-sisters, Candy Simpson, moved into their residence and worked for Antoine as a prostitute. The living situation was highly unstable, and Latasha fought with both Candy and Antoine, even at one point pouring lighter fluid on the latter. On August 10, 2013, Antoine physically assaulted Candy and ordered her to leave. The next day in the early afternoon, a group of people, which included Miah; another half-sister of both Miah and Candy, Joezetta Harper; and Tamarris, came to Antoine's house. They demanded to know Candy's whereabouts and were upset about her getting "jumped on." Latasha and Terrell both noticed at the time that one of the sisters, who they identified at trial as Miah, looked more like Candy than the other; and a man, who they identified at trial as Tamarris, had a readily apparent glass eye. The group left after being told that Candy was not present.
>
> Later that night, Johnson heard a knock at the door to the house and saw a person he identified as Miah, who he recognized as the person who looked like Candy from earlier that day, outside, apparently alone; she asked for Candy and, when Johnson informed her that Candy was not present, she asked for Antoine. Antoine came to the door and let Miah in, whereupon several men, one of whom Johnson immediately recognized as Tamarris, the man with the glass eye from earlier in the day, rushed in behind Miah. Two of the men, including Tamarris, were armed with guns. Miah went upstairs and confronted Latasha in a bedroom, stating she was looking for Candy, but Tamarris joined her and they escorted Latasha and Holley Jr. downstairs at gunpoint. Latasha also recognized Miah and Tamarris as Candy's sister and the man with the glass eye from earlier. Antoine and Terrell were on the floor, where the other man with a gun began "stomping" on Antoine. One of the men, believed to be the unidentified man with the handgun, then shot Antoine in the head. The intruders then left the house.

*People v. Stroud*, No. 322812, 2016 WL 901333, *1 (Mich. Ct. App. March 8, 2016) (unpublished joint appeal) (text and footnotes omitted).

Following her convictions and sentencing, the petitioner filed an appeal of right with the

2

Michigan Court of Appeals raising claims concerning the sufficiency of the evidence, the pre-trial identification procedures, and the exclusion of defense expert witness testimony. The Michigan Court of Appeals denied relief on those claims and affirmed her convictions. *Id*. at *2-5. The petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Stroud*, 500 Mich. 867, 885 N.W.2d 286 (2016).

The petitioner thereafter filed her federal habeas petition raising the same claims presented to the state courts on direct appeal. The respondent has filed an answer to the petition contending that it should be denied because the claims lack merit. The petitioner has filed a reply to that answer.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain federal habeas relief,

4

a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, federal circuit or district court cases do not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief. *See Parker v. Matthews*, 567 U.S.

5

37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Insufficient Evidence Claim

The petitioner first asserts that she is entitled to habeas relief because the prosecution failed to present sufficient evidence to support her second-degree murder and felonious assault conviction. The respondent contends that this claim lacks merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "mere existence of sufficient evidence to convict ... defeats a petitioner's claim." *Id.* at 788-89.

Under Michigan law, the elements of second-degree murder are: 1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998) (citing *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996)); Mich. Comp. Laws § 750.317. Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.* at 464 (citing *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 463, 584 N.W.2d 610, 612 (1998) (citing *Aaron*). Malice may also be inferred from the use of a deadly weapon. *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999). The elements of felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3)

7

with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999); Mich. Comp. Laws § 750.82.

To convict a defendant under an aiding and abetting theory, a prosecutor must show: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he or she gave aid and encouragement. *Carines*, 460 Mich. at 757-58; *see also People v. Robinson*, 475 Mich. 1, 6, 715 N.W.2d 44 (2006); Mich. Comp. Laws § 767.39. An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich. at 757-58.

Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

Applying the *Jackson* standard and the foregoing state standards, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> The evidence here showed that Miah was actively involved in looking for her half-sister and upset about the treatment her half-sister received at Antoine's hands. She returned to the house during the early morning hours and managed to gain entry to the house through inquiries to Terrell and a demand to speak to Antoine regarding Candy's whereabouts. Significantly, she appeared to be alone from inside the house, but four men entered behind her upon the door being opened; two of those men were armed with guns, one of which was a rifle. The evidence further shows that at least one of the

8

> men, Tamarris, had been with Miah earlier that day. The jury could reasonably infer that Miah was aware of their presence, aware of what angry people with guns tend to do with those guns, and facilitated their entry into the house by deceiving Terrell and Antoine into believing she was alone. The evidence shows that Miah was in no way surprised by the violent turn of events, and indeed was highly upset herself and worked in concert with Terrell, who had the rifle.
>
> The testimony was sufficient to enable the jury to find beyond a reasonable doubt that Miah and the four men were acting pursuant to a common purpose of trying to find Candy and to seek vengeance against Antoine. Pointing a loaded gun at another person is almost per se an intent to kill, and certainly that intent is a reasonable inference; there was no indication that any of the home intruders were defending themselves. Likewise, an intent to place someone in fear of an immediate battery or worse can readily and properly be inferred from forcing one's way into a person's home with loaded weapons. Miah actively participated in and facilitated the commission of the murder and the assaults by gaining entry to the house for the entire party and, once inside, by searching for and then securing the occupants. Although the evidence indicated that the actual murder and felonious assaults were committed by the men armed with firearms, it is reasonable to infer from all the facts and circumstances that Miah either intended the commission of the crimes or knew that the crimes were intended by the armed individuals, or that Antoine's murder was a natural and probable consequence of the offenses Miah intended to aid or abet. Accordingly, the evidence was sufficient to support her convictions under an aiding and abetting theory of criminal responsibility.

*Stroud*, 2016 WL 901333 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The evidence presented at trial, viewed in a light favorable to the prosecution, established that the petitioner participated in the crimes as an aider and abettor and that she acted with the requisite intent. Both Latasha Bargaineer and Terrell Johnson identified the petitioner as one of the people who came to the victims' house looking for Candy Simpson in the afternoon and at night when the shooting occurred. The trial testimony indicated that the petitioner and the others were upset by how Antoine Holley Sr. had treated Candy. The trial testimony further showed that on the second visit, the petitioner approached the door alone and asked to see Candy and then Antoine. As the petitioner entered the house, several men rushed the door. Co-defendant

9

Tamarris Aldridge and another man were armed with guns, one of which was a rifle. From such testimony, a reasonable jury could infer that the petitioner pretended to be alone and was working in concert with the men to gain entry to the house. The fact that two of the men were armed with guns as they rushed the door further supports an inference of the intent to kill, cause great bodily harm, and/or act in wanton and willful disregard of such likely consequences, as well as to place the victims in fear of immediate battery. The testimony also showed that the petitioner participated in the events leading up to the shooting once they were inside the house, including searching for Candy Simpson and then escorting some of the victims into one room in the house. While the petitioner did not directly commit the shooting and assaults upon the victims, her conduct before and during the incident showed that she acted as an aider and abettor and that she acted with requisite intent to support her second-degree murder and felonious assault convictions.

The petitioner challenges the jury's evaluation of the evidence presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

### B. Suggestive Identification Claim

The petitioner next asserts that she is entitled to habeas relief because the police used an unduly suggestive pre-trial identification procedure with Latasha Bargaineer and the trial court erred in failing to suppress Latasha's identification of her as one of the perpetrators of the crime. The police initially

showed Latasha a photographic array in which Latasha selected one of the petitioner's sisters as the girl who came to the house looking for Candy Simpson, but that array did not include the petitioner. At the time of that array, Latasha stated that she knew that the other people were not involved and that her selection looked like Candy's sister. Following further investigation, the police informed Latasha that the person she selected was not one of the perpetrators and that "another sister" was involved. The police subsequently showed Latasha a second photographic array, which included the petitioner. Latasha identified the petitioner as the girl who entered the house earlier in the day and later at night when the shooting occurred. Latasha also identified the petitioner as one of the perpetrators at trial. The respondent contends that this claim lacks merit.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). There is a two-step procedure for determine whether an identification can be admitted consistent with due process. The first step is to determine whether the identification procedure was impermissibly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). If it was, the second step is to determine whether the identification nonetheless has sufficient indicia of reliability considering all the circumstances. *Id*. Five considerations bear on the reliability of an identification: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a habeas petitioner meets

this burden of proof that the burden shifts to the state to prove that the identification was reliable. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

In this case, the Michigan Court of Appeals ruled that the photographic array was not unduly suggestive. The court explained in relevant part:

> As an initial matter, we have reviewed the lineups themselves and are satisfied that the two individuals Latasha selected do not look particularly similar. Significantly, the record simply does not show that Latasha selected Miah's photograph on the basis of any alleged similarity to the first. Rather, the record indicates that Latasha's first identification was hesitant and based on either her perception that the person she selected looked similar to the female assailant who came to her home, or her perception that she looked like Candy. We presume that if any other relative of either Miah or Candy was present in that lineup, that fact would have been brought to our attention. In contrast, the record indicates that Latasha's selection of Miah was immediate and based not on similarity to the first photograph, but based on Latasha's statement that the person she selected was the person who came to her home and was present when Antoine was shot. We appreciate defendants' arguments that confidence and accuracy are not necessarily correlated, but in this instance, the record indicates that Latasha's selection of Miah was based on her memory of the night Antoine was shot rather than her memory of the prior lineup. The statement by a police officer regarding "another sister" was not made during an identification procedure, but rather during a general discussion about the status of the case.
>
> We find that the photographic lineup was not unduly suggestive.

*Stroud*, 2016 WL 901333 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the photographs of the petitioner and her sister do not look so similar that Latasha would have necessarily picked the petitioner's photograph during the second array based upon the first array. Second, Latasha was aware that the female perpetrator was one of Candy's sisters because the women who came to the house during the day identified themselves as such. Third, the record indicates that Latasha chose the petitioner's photograph based upon her recollection of the crime. Latasha's initial identification of the petitioner's sister in the first array was somewhat tentative because, while she was sure that none of the other people depicted were involved,

12

she noted that the petitioner's sister looked like Candy Simpson. By contrast, Latasha's identification of the petitioner in the second array was unequivocal – she stated that the petitioner was one of the people who came to the house earlier in the day and at the time of the shooting. Given such circumstance, the pre-trial identification procedure was not unduly suggestive. More importantly, for purposes of federal habeas review, the Court cannot say that the Michigan Court of Appeals' ruling to that effect is unreasonable. Habeas relief is not warranted on this claim.

## C. Exclusion of Expert Witness Testimony Claim

Lastly, the petitioner asserts that she is entitled to habeas relief because the trial court erred and violated her right to present a defense by refusing to qualify Terence Campbell as an expert on eyewitness identification and excluding his proposed expert witness testimony at trial. The respondent contends that this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim, explaining in relevant part:

> As a general matter, expert testimony explaining the difference between how memories and eyewitness identifications are commonly believed to work and how they actually work can be helpful to assist the jury in evaluating the evidence before it. We further agree with defendants that there is a great deal of "good science" to the effect that witnesses' confidence in their recollections is uncorrelated with the actual accuracy of those recollections.
>
> However, defendants make little concrete, case-specific argument beyond establishing the bare facts that eyewitness testimony is a murkier business than is commonly believed and that expert testimony can shed some light on the matter that juries may not know is needed. Taken at face value, defendants' argument essentially extrapolates a mandate that expert testimony is required any time a case involves eyewitnesses. We disagree. Where the jury is given ample evidence upon which to evaluate whether a witness's confidence is actually warranted, and where no circumstances would suggest that any such confidence is misplaced, we are unpersuaded that defendants' proposed expert testimony would be more than an academic lecture in the abstract. We are not prepared to make expert testimony a mandatory part of any trial involving an eyewitness by judicial fiat.
>
> Defendants briefly and superficially point out, in no particular order, that Latasha and Terrell did not know them, that Latasha and Terrell only saw their assailants under fast-moving and high-stress circumstances, that the presence of weapons during the encounter would have drawn Latasha's and Terrell's attention, and that the lighting was poor. However, the evidence is that both witnesses saw defendants in well-lit situations during both encounters with them: one in broad daylight, the other, according to the witnesses, under ordinary household electric illumination. The first time they saw defendants was not a stress-free situation to be sure, but it was not the kind of perspective-warping, fast-paced, high-stress situation defendants discuss. It is highly significant that they recognized defendants during the second encounter, rather than seeing their assailants then for the first time. We do not find that the record supports defendants' contentions that the circumstances truly merit expert testimony to explain their significance. We do not find that the trial court abused its discretion or denied defendants' rights to present a defense by excluding Campbell's testimony.

*Stroud*, 2016 WL 901333 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that the petitioner asserts that the trial court erred in excluding the testimony under the Michigan Rule of Evidence or any other provision of Michigan law, she merely alleges a violation of state law which does not justify federal habeas relief. *See Estelle*, 502 U.S. at 67–68; *Serra*, 4 F.3d at 1354. State courts are the final arbiters of state law

and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Second, with respect to federal law, the petitioner fails to establish a constitutional violation. The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process).

A defendant's right to present evidence is not unlimited, however, and may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). When deciding if the exclusion of evidence impairs a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant was afforded "a meaningful opportunity to present a complete

defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers*, 410 U.S. at 302.

In this case, the exclusion of the expert witness testimony did not deprive the petitioner of the right to present a defense. First, the exclusion of the proposed testimony was reasonable and within the trial court's discretion under state evidentiary rules. *See* Mich. R. Evid. 702. While Terence Campbell was a psychologist with special experience in child sexual abuse and repressed memory cases, he did not have the same level of expertise in witness identification cases. Second, the petitioner was able to challenge the pre-trial identification procedures and the reliability of the trial identifications through cross-examination of the relevant witnesses. Third, the petitioner was able to make the logical argument that the identification testimony was unsound because the witnesses initially identified her sister as one of the people involved in the crime. Such circumstances indicate that the petitioner was able to present a sound defense that the identifications of her were inaccurate. The petitioner thus fails to demonstrate that the exclusion of the expert witness testimony deprived her of a meaningful opportunity to present a complete defense or otherwise impeded her ability to contest the criminal charges against her.

Moreover, the Court notes that the Supreme Court has never held that a state trial court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present a defense. *See Thomas v. Heidle*, 615 F. App'x 271, 282 (6th Cir. 2015) (ruling that exclusion of expert testimony on eyewitness identification is not a violation of clearly established federal law; case law shows that fair-minded jurists disagree on the exclusion of expert testimony on eyewitness identification, even when excluded on a blanket basis, and the Supreme Court has not directly spoken on the law applicable to the circumstances of the case). Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that the petitioner is not entitled to federal habeas relief on her claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before the petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies habeas relief on the merits of a claim, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court **DENIES** the petitioner leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**IT IS SO ORDERED**.

                                        s/John Corbett O'Meara
                                        United States District Judge

Date: July 13, 2018

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 13, 2018, using the ECF system and/or ordinary mail.

                                        s/William Barkholz
                                        Case Manager